UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CINDY HEIN & ERROL WOODEN KNIFE, <br><br>                 Plaintiffs, <br><br>   vs. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, <br><br>                Defendant. | 5:22-CV-05045-LLP <br><br><br> ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL (DOC. 22) |

**INTRODUCTION**

This matter is before the court on the Plaintiffs', Cindy Hein and Errol Wooden Knife, complaint alleging breach of contract and a bad faith denial of an insurance claim against the Defendant, the State Farm Mutual Automobile Insurance Company. (Doc. 1). Jurisdiction is premised on diverse citizenship of the parties and an amount in controversy in excess of $75,000. See 28 U.S.C. § 1332. Now pending is the Plaintiffs' motion to compel the Defendant to provide discovery responses. (Doc. 22). The Defendant opposes the motion. (Doc. 28). The District Court, the Honorable Lawrence L. Piersol, referred the motion to this magistrate judge for determination. (Doc. 32).

**FACTS**

The facts as set forth in the complaint and generally pertinent to the pending motion are as follows. In approximately July 2021, the Plaintiffs' 2014 Ford F-150 pickup sustained damage to the front of the vehicle. (Doc. 1, p. 7;

1

Doc. 4, p. 1).  The Plaintiffs contend the vehicle "slid off the road during a hailstorm and ran into a pole alongside the road in Rapid City, SD.  The front-end impact damaged the transmission fluid line connected to the auxiliary coolant tank and caused transmission fluid to leak from the vehicle."  (Doc. 23, pp. 1-2).  The Plaintiff called the Defendant and notified them of the accident. Id.  On or about August 8, 2021, the vehicle was towed to Roy's, at which point it would not move on its own.  Id.  On January 28, 2022, State Farm wrote to Errol Wooden Knife denying the claim indicating, their "investigation reveals these damages did not occur as a result of this loss.  Therefore, State Farm declines to make any voluntary payment for these damages."  Id. at pp. 2-3.  At all relevant times, the pickup was insured by State Farm.  (Doc. 1, p. 2; Doc. 28, p. 1).

On June 21, 2023, the Plaintiffs "move[d] this Court, pursuant to Rule 26 of the Federal Rules of Civil Procedure ("FRCP") and Local Rules RL 37.1, for an Order compelling the Defendant, State Farm Mutual Automobile Insurance Company, to fully answer the written discovery in Plaintiffs' First Set of Interrogatories and Request for Production of Documents as specified in the accompanying Brief in Support of Motion to Compel."  (Doc. 22).

## DISCUSSION

### I.  Motion to Compel

#### A.  "Meet and Confer"

FRCP 37(a)(1) requires that a party moving to compel discovery responses "include a certification that the movant has in good faith conferred

or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Likewise, South Dakota Civil Local Rule of Procedure 37.1 requires "[a] party filing a motion concerning a discovery dispute" to "file a separate certification describing the good faith efforts of the parties to resolve the dispute."

The meet-and-confer requirement is not an empty formality.  Pierce v. Fremar, LLC, 09-cv-4066, 2010 WL 3420169, *1 (D.S.D. Aug. 27, 2010) (citation omitted).  "The purpose of the meet and confer requirement is to force litigants to attempt to resolve, or at least narrow, the disputed issues to prevent the unnecessary waste of time and effort on any given motion." Robinson v. Napolitano, 08-cv-4084, 2009 WL 1586959, *3 (D.S.D. June 4, 2009) (internal quotations and citation omitted).  The moving party's motion may contain the equivalent of this certification in which the attorney "confirms that it has attempted in good faith to resolve this discovery dispute [with opposing counsel]" prior to filing the motion.  Collins v. St. Paul Fire & Marine Ins. Co., 5:15-cv-05047, 2016 WL 5794722, *1 (D.S.D. Sept. 30, 2016) (citing Highmark, Inc. v. Northwest Pipe Co., 10–cv-5089, 2012 WL 997007, *4 (D.S.D. Mar. 23, 2012)).

The parties engaged in an email exchange and a phone call.  (Docs. 24-2, 24-3, & 29-1).  On May 16, 2023, the Plaintiffs emailed the Defendant stating "[t]he questions that need to be supplemented are 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15 and 17.  I am attaching a copy of Wagner v. Dryvit Systems, 208 F.R.D. 606 [(D.N.E. Aug. 1, 2001),] supporting Plaintiffs' position that the type

3

of response requiring Plaintiffs to dig for the answers through the documents is not adequate." (Doc. 24-2, p. 1).  On May 23, 2023, the Defendant responded to the Plaintiffs' letter.  (Doc. 24-3).  The Defendant pointed to FRCP 33(d) which provides a party can answer an interrogatory by referring to other documents if the burden of deriving the answer will be substantially the same for either party.  Id. at p. 1.

"On May 31, 2023[,] Plaintiffs' and Defendant's counsel had a phone conference regarding the objections." (Doc. 23, p. 1).  The Plaintiffs assert "the end result of the discussion was that Defendant was not willing to identify names and specify details of the substance of knowledge for those individuals, but instead insisted that referring to certain pages of the claim file was all that was necessary to respond to the interrogatories." Id.  In the Plaintiffs' reply brief, they assert "[i]t was very clear during the early discussions about the interrogatories that State Farm would not be providing answers in the ordinary fashion and was insistent that the only way that State Farm would respond was by referring to the State Farm claim file in whole or to specific pages within the claim file.  It would have served no purpose to continue to discuss each interrogatory when State Farm was set firm in its position." (Doc. 30, p. 8). State Farm "agrees that Plaintiffs satisfied the requirements for Interrogatories 1, 9, and 11 (second one). . . .  The other Interrogatories targeted by Plaintiffs'

Motion, as well Request for Document 13, were not discussed during the May 31, 2023, phone conference."  (Doc. 28, p. 7).[1]

The parties' briefing and exhibits set forth the actions taken by the parties that satisfies the met the meet and confer requirements.  The court will accept this description as equivalent to the required certification and finds that the Plaintiffs have satisfied its duty to confer in good faith with counsel for State Farm to try to work out these differences before filing the instant motion. Therefore, the court will consider the motion on its merits.

### B.    Scope of Discovery

The scope of discovery for civil cases is set forth in FRCP 26(b)(1):

"Unless otherwise limited by court order, the scope of discovery is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable."

Fed. R. Civ. P. 26(b)(1).

The scope of discovery under Rule 26(b) is extremely broad.  <u>Frazier v. Famers Mutual Ins. Co. of Nebraska</u>, 4:19-cv-04132, 2021 WL 91083, *5

---

[1] Mr. Preheim, in his affidavit, states he wrote a memo after the parties' May 31, 2023, phone conference.  (Doc. 29-1, pp. 1-2; <u>see</u> Doc. 29-2, p. 1 (illustrating that the document was made and last modified on May 31, 2023)). The memo states, "[t]he only items Plaintiffs discussed during our phone conference was on the 'contention' Interrogatories 9, 10, 11, and the second 11, and a little about Interrogatory 1[.]"  <u>Id.</u> at p. 1.

(D.S.D. Jan. 11, 2021) (citing 8 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2007 (3d ed. Oct. 2020 update)).  "A party seeking discovery is merely required to make a threshold showing of relevance, which is more relaxed than the showing required for relevance in the context of admissibility." Klynsma v. Hydradyne, LLC, 13-cv-5016, 2015 WL 5773703, *16 (D.S.D. Sept. 30, 2015) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-51 (1978)); see Fed. R. Civ. P. 26(b)(1) (Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe[,] with a reasonable degree of specificity, the information they hope to obtain and its importance to their case."  Tovares v. Gallagher Bassett Servs., Inc., 5:16-cv-05051, 2020 WL 4740455, *2 (D.S.D. Aug. 14, 2020) (citation omitted).

    The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession."  Id. (quoting 8 Wright & Miller, § 2007; Hickman v. Taylor, 329 U.S. 495, 507 (1947)).  Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery.  Fed. R. Civ. P. 26(b)(1).  The rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial; these considerations are not inherent barriers to discovery.

The court may limit the frequency and extent of discovery.  Fed. R. Civ. P. 26(b)(2); see Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit.").  The party resisting discovery must show specifically how each request is irrelevant or unduly burdensome.  Klynsma, 2015 WL 5773703 at *16 (citation omitted).

"All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden."  Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991).  A mere statement that a discovery request is overly broad, burdensome, and irrelevant is not sufficient. St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000).  The party resisting discovery must show specifically how the discovery request is overly broad, burdensome, or seeks information that is not relevant.  Fed. R. Civ. P. 33(b)(4) ("grounds for objecting to an interrogatory must be stated with specificity").

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to move for a motion compelling disclosure after having made a good faith effort to resolve the dispute by conferring first with the other party.  Fed. R. Civ. P. 37(a).

7

C.    **Interrogatories**

The Plaintiffs move this court to compel the Defendant to respond to his interrogatories by doing more than directing him to documents.  (Doc. 22).  The Plaintiffs, citing to Wagner, assert that they are of the "position that the type of response requiring Plaintiff to dig for the answers through the documents is not adequate."  (Doc. 24-2, p. 1; Wagner, 208 F.R.D. 606).  In Wagner, the defendant responded to the plaintiff's discovery requests by referring the plaintiff to "repository arrangement system" that contained 146,832 documents.  Wagner, 208 F.R.D. at 608.  "The documents were not organized by date, subject matter or in any other way" and the responding party "provided no identification by Bates stamp number of the documents responsive to plaintiffs' request."  Id. at 609.  The Nebraska District Court held that producing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34.  Wagner, 208 F.R.D. at 610-11 (citation omitted).  The Plaintiffs also cite to Black Hills Molding, Inc., where the answering party referred to 534 pages of bates material.  (Doc. 23, p. 11). The court held that "[m]ore is required of Black Hills Molding than merely referring . . . to the entirety of its document production."  Black Hills Molding, Inc., 295 F.R.D. at 414.

The Defendant claims they have the right under FRCP 33(d) to respond by referring to documents they produced.  (Doc. 28).

Fed. R. Civ. P. 33(d) provides

If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's

8

business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identifying them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

The Plaintiffs argue that "[a] party relying on Rule 33(d) must: (1) affirm that the information sought in the interrogatory is in fact available in the specified records, (2) be able to demonstrate that answering the interrogatory in the ordinary fashion would impose a burden on it, (3) establish that the burden of compiling information is substantially the same for the interrogating and responding parties, and (4) specify which records contain the information sought by the interrogatory." (Doc. 23, pp. 13-14) (citing The Christian Coalition International v. United States, 2:01-cv-377, 2002 WL 1482523 *2 (E.D.Va. May 31, 2002) (citation omitted). While a correct citation, this is an inaccurate statement of law. Under Feder Rules of . R. Civ. P. 33(d), a party answering an interrogatory may point to outside information if the "burden of deriving or ascertaining the answer will be substantially the same for either party" and the answer "specifi[es] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identifying them as readily as the responding party could." Fed. R. Civ. P. 33(d). A party resisting discovery must show specifically how each request is irrelevant or unduly burdensome. Klynsma, 2015 WL 5773703 at *16 (citation omitted). FRCP 33(d) has no requirement that the responding party must demonstrate

that answering the interrogatory in the ordinary fashion would impose a burden.

The Defendant urges this Court to follow the process outlined by the Maryland District Court in <u>Minter v. Wells Fargo Bank, N.A.</u>, 286 F.R.D. 273 (D. Md. 2012). (Doc. 28, p. 9). The <u>Minter</u> Court held that the Fourth Circuit has adopted a two-part test when analyzing a Rule 33(d) dispute: (1) the moving party on a motion to compel must "make a prima facie showing that the use of Rule 33(d) is somehow inadequate to the task of answering discovery" and (2) "[i]f plaintiff makes such a showing, 'the burden then shifts to the producing party to justify the use of Rule 33(d) instead of answering the interrogatories.'" <u>Id.</u> (quoting <u>Minter</u>, 286 F.R.D. at 277-78).

The defendant also referred to <u>Poulos v. Summit Hotel Properties, LLC</u>, 2010 WL 2640394 (D.S.D. July 1, 2010). <u>Id.</u> at p. 10. In <u>Poulos</u>, the plaintiff responded to the defendant's interrogatories by citing "approximately 25 pages of factual assertions, details, and specific references to documents." <u>Id.</u> at *2. The defendant argued the "responses to the discovery requests at issue were deficient for being vague, qualified answers referring generally to depositions, pleadings, prior discovery responses, and documents—without citing Bates numbers—previously produced by the parties." <u>Id.</u> In denying the motion to compel, the Court reasoned, "[a] litigant may not compel his adversary to go to work for him." <u>Id.</u> at *2 (quoting <u>Breeland v. Yale & Towne Mfg. Co.</u>, 26 F.R.D. 119, 120 (E.D.N.Y.1960)) (citing <u>Phillips v. City of New York</u>, 230 F.R.D. 369, 370 (S.D.N.Y. 2005) (finding "no basis in law to support a determination that

10

detailed disclosure of defendant's theory of their cross-claim in the form [the requesting party] requests by way of contention interrogatories is compelled by the Federal Rules or any applicable law"). The <u>Poulos</u> Court concluded by stating that the "approximately 25 pages of factual assertions, details, and specific references to documents responsive to the discovery requests at issue were sufficient[.]" <u>Id.</u>

The Defendant, while believing they properly answered every question, objects to the "overly-broad nature" of several of the requests which they characterized as improper "blockbuster" or "identification of all facts" interrogatory. (Doc. 28). The Defendant states that "[s]o-called 'blockbuster' or 'contention' interrogatories (i.e., those that demand disclosure of each and every fact supporting a claim or defense) are disfavored." <u>Id.</u> at pp. 13-14 (citing <u>Community Voice Line, LLC v. Great Lakes Communication Corp.</u>, 12-cv-4048, 2013 WL 4048495 at *8 (N.D. Iowa Aug. 1, 2013)). The Defendant states "'to require specifically "each and every" fact and application of law to fact . . . would too often require a laborious, time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant and trivial details.'" <u>Id.</u> at p. 14 (quoting <u>Steil v. Humana Kansas City, Inc.</u>, 197 F.R.D. 445, 448 (D. Kan. 2000) (internal citations omitted).

A contention interrogatory asks "another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts." <u>Dziadek v. Charter Oak Fire Ins. Co.</u>, 11-cv-4134, 2014 WL 820049

*16 (D.S.D. Mar. 3, 2014) (quoting Black Hills Molding, Inc. v. Brandom

Holdings, LLC, 295 F.R.D. 403 (D.S.D. 2013).  When properly used, contention

interrogatories can be helpful "in that they may narrow and define the issues

for trial and enable the propounding party to determine the proof required to

rebut the responding party's claim or defense."  Moses v. Halstead, 236 F.R.D.

667, 674 (D. Kan. 2006) ("an interrogatory may properly inquire into a party's

contentions in the case"); see Black Hills Molding, Inc., 295 F.R.D. at 413

("party's discovery obligations are not yet satisfied where relevant contention

interrogatories remain unanswered"); Leksi, Inc. v. Federal Ins. Co., 129 F.R.D.

99, 107 (D.N.J. 1989) ("Interrogatories seeking to elicit what a party's

contentions will be at the time of trial are not objectionable, as responses to

these questions will help narrow the issues to be tried.").

     In some cases, contention interrogatories may be viewed by courts as

overly broad and unduly burdensome on their face by asking for "each and

every fact" or "all facts" which support a claim or defense.  See Moses, 236

F.R.D. at 674; Steil, 197 F.R.D. at 447.  Courts emphasize that "[c]ontention

interrogatories should not require a party to provide the equivalent of a

narrative account of the case."  Lucero, 240 F.R.D. at 594; see Poulos, 9-cv-

4062, 2010 WL 2640394 at *2 (quoting Breeland, 26 F.R.D. at 120 (broadly

phrased contention interrogatories that require a lengthy narrative explaining a

party's claims or defenses can be oppressive or unduly burdensome, and "[a]

litigant may not compel his adversary to go to work for him.")).  When faced

with contention interrogatories with overly broad language, courts typically

12

direct that an answer still be provided but narrow the scope of the needed response to the "material" or "principal" facts supporting a specific claim or defense.  Id. at pp. 594-95; Moses, 236 F.R.D. at 674; Steil, 197 F.R.D. at 447.

### 1. Interrogatory 1

Interrogatory 1 asked the Defendant to

> Identify each and every person who has knowledge of any fact or circumstance you contend supports any of your claims or defenses.  For each person, state their name, address, relation to the parties, and state in specific detail the information that individual possesses.

(Doc. 23, p. 3).  The Defendant responded,

> Please see the individual's identified in the initial disclosures and the claim file, SF 1-387, which was previously produced and which identifies the people and businesses that were involved with the Plaintiffs' claims and describes what their respective roles were, as well as the information they know about the Plaintiffs' claims. With the exception of the State Farm employees, their contact information is also in the claim file.  Any contact with State Farm employees should be made through defense counsel.

Id.  The Plaintiffs objected to the Defendant's response because "State Farm cannot demonstrate that answering the interrogatories in the ordinary fashion would impose a burden on it."  (Doc. 23, p. 14).  As previously stated, parties are not required to show a burden before responding, under FRCP 33(d), by referring to documents they produced.  In the present case, the total number of pages in the claim files is 387, the documents are organized by claim number and bates stamped.  Therefore, the circumstances in Wagner and Black Hills Molding, Inc. are fundamentally different than the case at hand.  As those cases referred to an unorganized, large quantity of bates material.

Further, interrogatory 1 is so broadly worded that the burden or expense of the proposed discovery outweighs its likely benefit.  Roberts, 352 F.3d at 361; see Breeland, 26 F.R.D. at 120 (broadly phrased contention interrogatories that require a lengthy narrative explaining a party's claims or defenses can be oppressive or unduly burdensome, and a "litigant may not compel his adversary to go to work for him.").  The Plaintiffs' motion to compel on the first interrogatory is denied.

**2. Interrogatory 3**

Interrogatory 3 asked the Defendant to

> Identify each and every person employed by State Farm who communicated with Cindy Hein or Errol Wooden Knife on or after July 25, 2021, regarding the collision claim for the July 25, 2021, subject collision.  For each person, state their name, address, relation to the parties, date and time of communication and state in specific detail the substance of communication that occurred.

(Doc. 23, p. 4).  The Defendant responded,

> Please see the individual's identified in the initial disclosures and the claim file, SF 1-387, which was previously produced and which identifies the State Farm employees that spoke to the Plaintiffs with regard to the subject collision and describes what the substance of their communication was.

Id.

The Plaintiffs stated that "[a] fact question may exist as to when the claim was reported, what happened during a supposed recorded statement phone call and whether there was sufficient communication with the insureds regarding the reason why the subject vehicle quit running the day after the accident."  Id. at p. 16.  In their response brief, Plaintiffs state that they "have a letter from State Farm dated August 12, 2021, referring to a new claim with a

14

date of loss of August 8, 2021, but no indication in the claim file regarding communication with either of the Plaintiffs.  It is important to note that this August 12, 2021, correspondence does not show up in the claim file produced by State Farm." (Doc. 30, p. 9).  The Defendant denied this alleged correspondence.  The existence of this conversation is a question to be determined by the finder of fact.

The Plaintiffs also state the Defendant "should answer the interrogatory under oath in the ordinary fashion rather than referring to in general 387 pages of the State Farm claim file." (Doc. 23, p. 16).  It is true that the Defendant's answer referred to the entire claim fire.  However, in the Defendant's brief in response to plaintiff's motion to compel, the Defendant specifically referred to SF 74 and 75.  The court finds that these pages sufficiently answer the plaintiff's interrogatory.

Although the Defendant improperly answered the interrogatory, the Defendant's brief in response to plaintiff's motion to compel specified the records; thus, the Plaintiffs' motion to compel on the third interrogatory is denied as moot.

### 3. Interrogatory 4

Interrogatory 4 asked the Defendant to

> Identify each and every person employed by or hired by State Farm who conducted an automotive transmission system analysis to try to determine whether the July 25, 2021, subject collision was the reason why the subject Ford F150 pickup transmission ceased to operate.  For each person, state their name, address, relation to the parties, date and time of the automotive transmission system analysis and state in specific detail the substance of findings and conclusions related to the analysis.

15

(Doc. 23, p. 4).  The Defendant responded,

> This Interrogatory is objected to on the grounds that it seeks
> information protected by Federal Rule of Civil Procedure 26(b)(4).
> It is also objected to on the grounds that it seeks information
> protected by the work product privilege and attorney client
> privilege.  Without waiving these objections, Todd Egge at Jay Egge
> Automatic Service, Inc., inspected the transmission. Please see SF
> Transmission 1-38 attached to Defendant's Responses to Plaintiffs
> Requests for Production of Documents.  Discovery is ongoing, and
> a copy of his report containing his opinions and conclusions, the
> basis and facts for each, will be provided.  Additionally, Andy
> Ullom performed a virtual inspection of the vehicle as documented
> on SF 230-231.  In a good faith effort to further respond to this
> Interrogatory, and even though it was not "employed or hired" by
> State Farm, Roy's Westside Auto Body also inspected the vehicle in
> person and relayed its observations and conclusions to State Farm
> as described in in the claim files previously produced as SF 1-387,
> including SF 72, 74, 75, 230, 231, 233, 235, 272, and 273.  And a
> mechanic at Black Hills Tire inspected the vehicle and relayed his
> observations and conclusions to Brian at Roy's Westside Auto
> Body, who passed the information on to State Farm as described in
> SF 75, 233, and 235.

Id.  The Plaintiffs state "State Farm fails to affirmatively indicate that anyone

before Todd Egge's examination in March of 2023 performed such an

investigation.  State Farm indicates that Andy Ullom looked at photographs of

the outside damage to the front of the subject vehicle and that an unnamed

mechanic looked at the vehicle.  The response does not indicate when the

mechanic looked at the vehicle nor what the mechanic observed and

recommended."  (Doc. 23, p. 16).

Interrogatory four was properly answered.  SF 230-231 provides

information on when Andy Ullom performed the vehicle inspection and what

the results were.  (Doc. 28, Ex. 3).  Ullom wrote "Unable to relate transmission

16

damage to this loss, Shop state INSD has been driving vehicle since DOL with damage to transmission cooling lines, cooling lines leaked out trans fluid and eventually caused transmission to expire.  Unable to write a complete estimate of damages to front of vehicle as only could see exterior damage in shop submitted photos as all inspections in Rapid City are virtual due to no estimatics presence." (Doc. 28, pp. 18-19).  In fact, the Defendant's answer went above and beyond what the interrogatory asked, as it provided information on individuals not employed by State Farm as well.

The Plaintiffs state "[a]gain State Farm should fully answer the interrogatory in the ordinary fashion without referring to pages from the claim file." (Doc. 23, p. 16).  The Defendant's answer was proper under FRCP 33(d). The Plaintiffs' motion to compel on the fourth interrogatory is denied.

### 4. Interrogatory 5

Interrogatory 5 asked the Defendant to

> Identify each and every person employed by State Farm who authorized the moving of the subject Ford F150 pickup from Roy's Auto Body to Black Hill Tire after the subject Ford F150 pickup was towed to Roy's Auto Body on or about August 8, 2021.  For each person, state their name, address, relation to the parties, date and time when they authorized the moving of the subject Ford F150 pickup and with respect to said authorization state to whom the State Farm representative gave the authority to move the subject vehicle and state in detail substance of the communication.  Also please state from whom State Farm got the authority to have vehicle moved.

(Doc. 23, p. 4).  The Defendant responded,

> Brian at Roy's Auto Body had the vehicle towed to Black Hills Tire as documented on SF 75 and 233.  Brian is not an employee of State Farm.

17

Id.  The Plaintiffs assert that "State Farm should answer under oath that State Farm had nothing to do with the event of moving the vehicle if that is the case and whether State Farm paid for the towing from Roy's to Black Hills Tire." The Defendant's answer does not state whether anyone at State Farm authorized the moving of the vehicle.  The Plaintiffs' motion to compel on the fifth interrogatory is granted.

### 5. Interrogatory 6

Interrogatory 6 asked the Defendant to

> Identify each and every person employed by State Farm who reported or indicated between July 25, 2021, and January 28, 2022, that they had obtained relevant evidence regarding the cause of the subject Ford F150 pickup's transmission failure.  For each person, state their name, address, relation to the parties, date and time when they obtained the piece of relevant evidence, a specific description of the evidence and from whom the specific evidence was received.

(Doc. 23, p. 5).  The Defendant responded,

> Andy Ullom performed a virtual inspection of the vehicle as documented on SF 230-231.  In a good faith effort to further respond to this Interrogatory, and even though it was not "employed" by State Farm, Roy's Westside Auto Body also inspected the vehicle in person and relayed its observations and conclusions to State Farm as described in in the claim files previously produced as SF 1-387, including SF 72, 74, 75, 230, 231, 233, 235, 272, and 273.  And a mechanic at Black Hills Tire inspected the vehicle and relayed his observations and conclusions to Brian at Roy's Westside Auto Body, who passed the information on to State Farm as described in SF 75, 233, and 235.

Id.

The Defendant properly answered the interrogatory.  The Defendant stated Andy Ullom, a State Farm employee, had obtained relevant evidence regarding the cause of the subject Ford F150 pickup's transmission failure.  Id.

Again, the Defendant's answer went above and beyond what was asked by providing information that Roy's Westside Auto Body received. The Plaintiffs do not state why the answer given was deficient. The Plaintiffs' motion to compel on the sixth interrogatory is denied.

### 6. Interrogatory 9

Interrogatory 9 asked the Defendant

> Is it State Farm's contention that Errol Wooden Knife or Cindy Hein continued to drive the subject Ford Fl 50 pickup for an extended period of time after the 7/25/2021 date of loss? If so, what is the factual basis of such contention and what or who is the source of the factual basis? Did State Farm ever communicate with Errol Wooden Knife or Cindy Hein to verify whether Errol Wooden Knife or Cindy Hein continued to drive the subject Ford Fl50 for an extended period of time after the 7/25/2021 date of loss? If so, state the time and date of such communication and the name, address and phone number of the State Farm employee who communicated with Errol Wooden Knife or Cindy Hein.

(Doc. 23, p. 5). The Defendant responded,

> Please see the claim files in SF 1-387, including SF 72, 74, 75, 229-233, 235, 272, and 273 for information obtained by State Farm from Roy's Auto Body. And also see the information obtained after a mechanic at Black Hills Tire inspected the vehicle and relayed his observations and conclusions to Brian at Roy's Westside Auto Body, who passed the information on to State Farm as described in SF 75, 233, and 235. Also see Plaintiff Wooden Knife's deposition testimony at page 62. Discovery is ongoing, and a copy of the report by Todd Egge at Jay Egge Automatic Service, Inc., that contains his opinions and conclusions, the basis and facts for each, will be provided.[2]  Please see SF Transmission 1-38 attached to Defendant's Responses to Plaintiffs' Requests for Production of Documents.

---

[2] The Defendant stated a copy of Todd Egge's report, that contains his opinions and conclusions, the basis and facts for each, "was produced before this discovery dispute arose." (Doc. 28, p. 32). In the reply brief, the Plaintiffs failed to state whether they received Egge's report. (Doc. 30).

Id.  Interrogatory 9 asks two questions: (1) whether the Defendant believes the
Plaintiffs "continued to drive the subject Ford Fl 50 pickup for an extended
period of time after the 7/25/2021 date of loss" and (2) whether the Defendant
communicated with the Plaintiffs to verify whether the vehicle was driven
extensively after the date of loss.  Id.

   First, the Defendant failed to affirmatively state whether they believe the
Plaintiffs "continued to drive the subject Ford Fl 50 pickup for an extended
period of time after the 7/25/2021 date of loss."  The Defendant cited specific
pages in the claim files, which stated that the Plaintiffs "hit a utility pole and
continue to drive vehicle after loss" and "Shop states INSD [insured] has been
driving vehicle since DOL [date of loss]."  (Doc. 28, Ex. 3, SF).   While this
information states the pickup was driven, it does not affirmatively state
whether the vehicle was driven for an extended period of time, as asked by the
interrogatory.  In the Defendant's brief in response to Plaintiffs' motion to
compel, the Defendant states that compelling the Defendant to answer whether
they believe the vehicle was driven extensively after the accident is
"tantamount to the Court ruling on the merits of the parties' dispute."  (Doc.
28, p. 27).  The court disagrees, the Defendant is able to answer this
interrogatory without the Court ruling on the merits.  On this ground, the
Plaintiffs' motion to compel on the ninth interrogatory is granted.

   Second, the Defendant did not state if they communicated with the
Plaintiffs to verify whether the vehicle was driven extensively after the date of

loss.  On this ground, the Plaintiffs' motion to compel on the ninth

interrogatory is granted.

### 7. Interrogatory 11[3]

Interrogatory 11 asked the Defendant

> Is it State Farm's contention that the subject Ford F 150 pickup transmission was failing prior to the 7/25/2021 date of loss?  If so, what is the factual basis of such contention and what or who is the source of the factual basis?  Did State Farm ever communicate with Errol Wooden Knife or Cindy Hein to verify whether the subject transmission was failing prior to the 7/25/2021 date of loss?  If so, state the time and date of such communication and the name, address and phone number of the State Farm employee who communicated with Errol Wooden Knife or Cindy Hein.

(Doc. 23, p. 5).  The Defendant responded,

> Yes.  Please see the claim files in SF 1-387, including SF 72, 74, 75, 229- 233, 235, 272, and 273 for information obtained by State Farm from Roy's Auto Body.  And also see the information obtained after a mechanic at Black Hills Tire inspected the vehicle and relayed his observations and conclusions to Brian at Roy's Westside Auto Body, who passed the information on to State Farm as described in SF 75, 233, and 235.  Discovery is ongoing, and a copy of the report by Todd Egge at Jay Egge Automatic Service, Inc., that contains his opinions and conclusions, the basis and facts for each, will be provided.  Please see SF Transmission 1-38 attached to Defendant's Responses to Plaintiffs Requests for Production of Documents.

Id. at pp. 5-6.

Interrogatory 11 ask two questions: (1) whether it was the Defendant's

contention that the transmission was failing prior to the date of loss and (2)

---

[3] There are two Interrogatory 11's in plaintiffs' first set of discovery; however, the motion to compel refers to one Interrogatory 11.  (Doc. 23, pp. 5-6).  Thus, the court will address Interrogatory 11 as written in the motion to compel.

whether the defendant ever communicated with the Plaintiffs to verify whether the subject transmission was failing prior to the date of loss.  Id.

The Defendant properly responded to the first part of Interrogatory 11. The Defendant referred to 11 pages of the bates report in which they provided evidence as to why they believe the transmission was failing prior to the date of loss.  This evidence includes the name of who entered the report, when it was entered, and evidence supporting the entry.

The Defendant did not address the second part of Interrogatory 11 as to whether the defendant ever communicated with the Plaintiffs to verify whether the subject transmission was failing prior to the date of loss.  On this ground, the Plaintiffs' motion to compel on Interrogatory 11 is granted.

## 8. Interrogatory 14

Interrogatory 14 asked the Defendant

> On 1/19/2022, State Farm employee, Daniel Nordgren, wrote in the claim file that "Photos will not change Estimatics handling of this file", "Research and facts document the fact that the insured does not appear to have mitigated their damage in relationship to damages to transmission", "Collision damages would have no apparent impact to transmission", Documentation from repair facility indicates insured continued to drive vehicle for an extended period of time after loss", No further handling necessary from Estimatics at this time".  Please identify each piece of research and identify each fact that supports the conclusion that insured did not mitigate his damage, the date that each piece of research and fact was obtained by State Farm, the name of the State Farm employee that conducted the research or found the fact and the source of the research or fact.  Also identify each document from the repair facility indicating that insured continued to drive the vehicle for an extended period of time by providing the name of the repair facility, name address and phone number of employee of repair facility who provided the documentation and whether State Farm attempted to verify with Cindy Hein or Errol Wooden Knife whether the vehicle was being driven for an extended period of time after the loss.  Also

22

please identify the name, address and phone number of the
qualified transmission expert relied upon by State Farm to
conclude that the "collision damages would have no apparent
impact to transmission".

(Doc. 23, p. 6).  The Defendant responded,

See SF 223.  Also see the claim files in SF 1-387, including SF 72,
74, 75, 229-233, 235, 272, and 273 for information obtained by
State Farm from Roy's Auto Body.  And also see the information
obtained after a mechanic at Black Hills Tire inspected the vehicle
and relayed his observations and conclusions to Brian at Roy's
Westside Auto Body, who passed the information on to State Farm
as described in SF 75, 233, and 235.  Discovery is ongoing, and a
copy of the report by Todd Egge at Jay Egge Automatic Service,
Inc., that contains his opinions and conclusions, the basis and
facts for each, will be provided.[4]  Please see SF Transmission 1-38
attached to Defendant's Responses to Plaintiffs Requests for
Production of Documents.

Id.

The Defendant's answer specifically referred to SF 223.  Id.  SF 223

states "It was not the act of running into the pole that caused transmission

failure, it was continuing to drive it following the loss w/ leaking fluid which

caused dmg." (Doc. 29-3, p. 16).  The answer then referred to 11 pages of the

bates record which "specifically refer to other claim entries supporting that

conclusion by Hughes." (Doc. 28, pp. 30-31).  The cited pages refer to specific

pages in the claim file, which contains the dates, participants, and specific

information, upon which the Defendant came to their conclusion that the

Plaintiffs did not mitigate their damage.  The court finds that the Defendant

---

[4] As previously discussed, the Defendant stated a copy of Todd Egge's report
"was produced before this discovery dispute arose."  See supra footnote 2.

properly answered interrogatory 14; therefore, on this ground, the motion to

compel is denied.

### 9. Interrogatory 15

Interrogatory 15 asked the Defendant to

> On January 28, 2022, State Farm employee, Kendra Ricks, wrote a
> denial letter in part indicating that State Farm had gathered
> sufficient information to make a decision and that State Farm's
> investigation reveals that the transmission damage did not occur
> as a result of the 7/25/2021 loss.  Please identify the itemized
> sufficient information gathered by State Farm allowing it to make a
> decision and each piece of evidence gathered from State Farm's
> investigation that reveals that the transmission damage did not
> occur as a result of the 7/25/2021 loss.

(Doc. 23, p. 6).  The Defendant responded,

> See SF 223.  Also see the claim files in SF 1-387, including SF 72,
> 74, 75, 229-233, 235, 272, and 273 for information obtained by
> State Farm from Roy's Auto Body.  And also see the information
> obtained after a mechanic at Black Hills Tire inspected the vehicle
> and relayed his observations and conclusions to Brian at Roy's
> Westside Auto Body, who passed the information on to State Farm
> as described in SF 75, 233, and 235.

Id.

The Plaintiffs' answer refers to the same specific pages in the claim file as

their answer in Interrogatory 15.  Id.  The answer explained why the

transmission claim was denied by referring to the specific pages in the claim

file, which showed who created them, when they were created, and the

information that gave rise to the conclusion.  The answer also explained that

the conclusion was based on information provided by Roy's, and referred to

specific pages in the claim file by bates number.  The Plaintiffs' motion to

compel on Interrogatory 15 is denied.

10.        **Interrogatory 17**

Interrogatory 17 asked the Defendant to

> After State Farm received the communication from Errol Wooden
> Knife on about March 17, 2022, what, if any, investigation was
> conducted by State Farm to determine whether the vehicle had not
> been driven for an extended period of time after the 7/25/2021,
> date of loss.  Did State Farm reconsider its denial of the
> 7/25/2021 date of loss claim after receiving the March 2022 letter
> from Errol Wooden Knife, and if so, specify when the claim was
> reconsidered, who was involved with the reconsideration, what
> evidence was reconsidered and specify in detail the conclusions
> formed as a result of the reconsideration and the factual basis for
> those conclusions.

(Doc. 28, p. 34).  The Defendant responded,

> See SF 222-223.  Also see the claim files in SF 1-387, including SF
> 72, 74, 75, 229-233, 235, 272, and 273 for information obtained
> by State Farm from Roy's Auto Body.  And also see the information
> obtained after a mechanic at Black Hills Tire inspected the vehicle
> and relayed his observations and conclusions to Brian at Roy's
> Westside Auto Body, who passed the information on to State Farm
> as described in SF 75, 233, and 235.

Id.

The Defendant's answer stated what investigation was conducted by

State Farm to determine whether the vehicle had not been driven for an

extended period of time after the date of loss, by referring to bates page,

specifically SF 222-223.  Id.  Bates pages SF 222-223 illustrates actions done

by the Defendant after March 17, 2022.  The answer also states that the

conclusion was based on information obtained by State Farm from Roy's and a

mechanic at Black Hills Tire.  Id.  On this ground, the Plaintiffs' motion to

compel is denied.

The Defendant failed to respond to whether it "reconsider[ed] its denial of

the 7/25/2021 date of loss claim after receiving the March 2022 letter from

Errol Wooden Knife, and if so, specify when the claim was reconsidered, who was involved with the reconsideration, what evidence was reconsidered and specify in detail the conclusions formed as a result of the reconsideration and the factual basis for those conclusions." On this ground, the Plaintiffs' motion to compel is granted.

### D.    Request for Production

The Plaintiff seeks to compel responses to request number 13, which asks for:

> All claim files for other claims in which Defendant denied coverage
> for transmission damage collision claims to motor vehicles; and all
> claim files for auto transmission damage collision claims in Rapid
> City, Sturgis, Deadwood South Dakota and/or any other towns,
> cities or rural locations with Pennington, Meade, Lawrence County,
> South Dakota, whether denied or granted. The scope of this
> request is January 1, 2015, to the present.

(Doc. 23, p. 7). The Defendant responded by stating:

> State Farm objects to this request on the grounds that it is vague
> and ambiguous with respect to the use of the terms "denied
> coverage for transmission damage collision claims." It is also
> objected to on the grounds that it is overly broad and unduly
> burdensome in that it seeks "all claim files" involving "denied
> coverage for transmission damage collision" without limitation to
> location or type of insurance coverage. It is also objected to on the
> grounds that it is also overly broad and unduly burdensome in
> that it then goes on to ask for "all claim files for auto transmission
> damage collision claims in Rapid City, Sturgis, Deadwood South
> Dakota and/or any other towns, cities or rural locations with
> Pennington, Meade, Lawrence County, South Dakota, whether
> denied or granted.
> State Farm further objects to this request on the grounds that it
> seeks information that is neither relevant to the claims or defenses
> of a party nor proportional to the needs of the case. It seeks
> confidential business information and invades the privacy rights of
> policyholders who are not parties to this lawsuit. The documents
> sought may also be protected by the attorney-client privilege and
> work product doctrine. The existence of other claims and/or what
> may or may not have occurred with respect to another claim will
> neither prove nor disprove whether or not the transmission in this

26

case was damaged by the accident at issue her.  Finally, any such matters unrelated to the event that is the subject of this lawsuit, have no nexus to the harm claimed to have been sustained by the plaintiff herein with regard to their claim under the subject policy, is irrelevant and the question is not reasonably calculated to lead to admissible evidence because there would have to be separate "mini-trials" to ascertain whether the other transmission claims were properly/improperly denied based on the facts and evidence for each particular claim.

Id.

The Plaintiffs state that "[t]he purpose of the request is to determine whether State Farm has a pattern of denying transmission failure claims.  The production of other transmission failure claims may lead to the discovery of relevant evidence regarding the way that State Farm investigates and processes these type of claims.  This Court has held that evidence of past bad faith claims and other unfair claim processing claims are routinely asked and routinely produced, in this district."  (Doc. 23, p. 17 (citing Frazier, 2021 WL 91083 at *8).  In the Plaintiffs' reply brief in support of motion to compel, they state they "agree that the date range be limited to five years and to the geographical limitation to those locations of Rapid City, Deadwood and Sturgis and Pennington, Meade and Lawrence Counties."  (Doc. 30, p. 11).

Request for production number 13 is contradictory on its face.  Even after limiting the date range and geographical location, the request still asks for all claims in which the Defendant denied coverage for transmission damage collision to motor vehicles and claims whether denied or granted.  (Doc. 23, p. 7).  To the extent that the request for production seeks all claim files for auto-transmission damage collision claims in Pennington, Meade, and Lawrence County, South Dakota from January 1, 2015, to the present, the motion is

27

granted.  To the extent that it seeks all claim files for other claims outside the date range and geographical location, the motion is denied.

## II.   Attorney's Fees and Costs

The Plaintiffs move for an award of attorneys' fees and expenses under FRCP 37(a)(5)(A), which states that if the court grants a motion to compel, or if the requested discovery is provided after a motion to compel has been filed, "the court **must**, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  (emphasis supplied). The award of fees and expenses is mandatory unless the court finds that the moving party failed to confer in good faith with the responding party prior to filing the motion, the responding party's refusal to respond was substantially justified, or other circumstances make an award of expenses unjust.  Id.

Relevant here is the exception that prohibits the court from awarding such fees and expenses if "the opposing party's nondisclosure, response, or objection was substantially justified[.]" Fed. R. Civ. P. 37(a)(5)(A)(ii).  "The party resisting sanctions bears the burden of showing that its position was substantially justified." Mgmt. Registry, Inc. v. A.W. Cos., 2020 WL 1910589, *13 (D. Minn. Apr. 20, 2020) (citing Bah v. Cangemi, 548 F.3d 680, 684 (8th Cir. 2008)).  Substantial justification means reasonable minds could differ as to whether the party was justified in resisting the discovery sought.  Kirschenman v. Auto-Owners Ins., 09-cv-4190, 2012 WL 1493833, *1 (D.S.D. Apr. 27, 2012)

(quoting Oyen v. Land O'Lakes, Inc., 07-cv-4112, 2009 WL 536606, *3 (D.S.D. Mar. 3, 2009)).

Neither party has addressed the provisions of Rule 37 in their briefs, other than the bare recitation of the request for relief contained in Plaintiffs' brief. If the Plaintiffs wish to have the court award attorney's fees, they shall file a motion seeking such relief within 20 days from the date of this order. Plaintiffs' motion should include an itemized accounting of attorney and paralegal time spent on the motion, the hourly rate, information about the attorney and/or paralegal in support of the hourly rate, and any law or argument concerning whether the Defendant's position was substantially justified. The Defendant shall have 10 days after service of Plaintiffs' motion to respond or object thereto.

## CONCLUSION

Good cause appearing, it is hereby

ORDERED that Plaintiffs' motion to compel [Doc. 22] is granted in part and denied in part as more specifically described above. It is further

ORDERED that Plaintiff shall provide the requested discovery consistent with this order within 21 days of the date of this order. It is further

ORDERED that the Motion for attorney fees is denied without prejudice.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service

29

of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 7th day of August, 2023.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge